UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BHS LAW LLP,

        Plaintiff,

   v.

WORLDEX INDUSTRY AND TRADING
CO., LTD., AND LUIS MENDOZA,

        Defendants.

Case No. 25-cv-04471-SVK

**ORDER DENYING PLAINTIFF'S
MOTIONS TO DISQUALIFY
OPPOSING COUNSEL; GRANTING
IN PART AND DENYING IN PART
DEFENDANT WORLDEX INDUSTRY
AND TRADING CO., LTD.'S MOTION
TO QUASH SERVICE OR IN THE
ALTERNATIVE DISMISS; GRANTING
IN PART AND DENYING IN PART
DEFENDANT LUIS MENDOZA'S
MOTION TO DISMISS/STRIKE AND
PLAINTIFF'S MOTION FOR LEAVE
TO AMEND**

**CLARIFYING STATUS OF MOTIONS
FOR SANCTIONS**

Re: Dkt. Nos. 15, 32, 41, 44, 45, 50

Before the Court are various pending motions by the Parties, as well as a letter of intent to file motions for Rule 11 sanctions. *See* Dkts. 15, 32, 41, 44, 45, 50. All Parties have consented to magistrate-judge jurisdiction. Dkts. 7, 14, 40. The Court determines that all pending motions are suitable for resolution without oral argument. Civil L.R. 7-1(b). The factual background and procedural history of this case (and several other cases, as relevant) is described below. Having considered the submissions, the relevant law and the record in this action, for the reasons set forth below, the Court **ORDERS** as follows:

- Plaintiff Bhs Law, LLP's ("Bhs")[1] Motions to Disqualify Capstone Law APC

---

[1] On November 17, 2025, Plaintiff's counsel, Brian H. Song, filed a notice informing the Court that he was changing the form of his law firm "from a LLP to a Law Corporation," and he is now affiliated with Bhs Law Corporation. *See* Dkt. 73. While Mr. Song remains the attorney of record, it is not clear whether the complaint must also be amended to substitute Bhs Law Corporation for Bhs Law, LLP as the plaintiff. In the interest of judicial economy and efficiency to the Parties, for the purposes of deciding the pending motions, the Court assumes that Bhs Law

("Capstone"), counsel for Defendant Luis Mendoza and O'Hagan Meyer LLP ("O'Hagan"), and counsel for Defendant Worldex Industry and Trading Co., Ltd. ("Worldex"), (*see* Dkts. 44-45, respectively), are **DENIED**.

- Worldex's Motion to Dismiss or in the Alternative to Quash Service of Process, (Dkt. 15), is **GRANTED IN PART** and **DENIED IN PART**.

- Mr. Mendoza's Anti-SLAPP[2] Motion to Strike or in the Alternative to Dismiss, (Dkt. 32), is **GRANTED IN PART AND DENIED IN PART**.

- Finally, Bhs is **GRANTED leave to amend in part**, and its Motion for Leave to Amend (Dkt. 50) is **DENIED IN PART**.

I.    BACKGROUND

    A.    Judicial Notice

As an initial matter, in ruling on a motion to dismiss, a court may consider "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061. (9th Cir. 2008). Courts may take judicial notice of facts "not subject to reasonable dispute," either because they are "generally known" or "can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). In relevant part, "a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Id.* "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* Thus, the background is drawn from Bhs's First Amended Complaint (Dkt. 3) as well as undisputed facts that are matters of public record – of which the Court takes judicial notice as indicated herein.

The Parties in this case have filed a number of requests for judicial notice. *See* Dkt. 16 ("Worldex's RJN"); Dkt. 22 ("Bhs's First RJN"); Dkts. 32-3 and 48-1 (collectively, the

---

Corporation is either the same plaintiff as Bhs Law LLP or at least its successor in interest and may assert all of the same causes of action. *See, e.g.*, *Patriot Rail Corp. v. Sierra R.R. Co.*, No. 09-cv-00009-TLN, 2014 WL 1664898, at *6 (E.D. Cal. Apr. 25, 2014) (permitting substitution of Patriot Rail LLC for the prior-formed plaintiff, Patriot Rail Corp.).

[2] SLAPP refers to the focus of the statute authorizing such motions and stands for "Strategic Lawsuit Against Public Participation." Cal. Code Civ. P. § 425.16

2

United States District Court
Northern District of California

"Mendoza RJNs");  Dkts. 42-2–42-5 (collectively, "Bhs's Second RJN").  The Court hereby **GRANTS IN PART** and **DENIES IN PART** the requests for judicial notice as follows:

- All Parties' requests for judicial notice of filings and other matters in the related judicial actions (as explained in Sections I.A-B, below, and collectively, the "Related Actions") are **GRANTED IN PART** as matters of public record, but **only** as to the facts that are recounted and cited herein.  This includes, to the extent referenced:  all exhibits attached to Worldex's RJN except for Exhibit 1;  Exhibits 1-6 and 11-12 to Bhs's First RJN;  all exhibits to the Mendoza RJNs;  and Exhibits 3, 5-13, and 15-17 to Bhs's Second RJN.

- The Court also separately takes notice of Exhibit 1 to Worldex's RJN (the U.S. Department of State webpage for South Korea Judicial Assistance Information) and Exhibit 7 to Bhs's Second RJN (the California Secretary of State's Statement of Information for West Coast Quartz Corporation);  both of these exhibits are government documents and the relevant facts are not subject to reasonable dispute.

- Conversely, the Court **DENIES** the requests to take judicial notice of Exhibits 1-2, 4 and 14 to Bhs's Second RJN as the provenance of these documents is not clear.

- The Court otherwise **DENIES AS MOOT** all requests for judicial notice to the extent a fact is not recited (and document cited) herein.

**B.      Bhs's Factual Allegations and the Underlying State Action**

Underlying this action is a California state court class-action suit against West Coast Quartz Corporation ("WCQ"), *Mendoza et al. v. West Coast Quartz Corporation*, RG18927787 (Alameda County)) (the "*Mendoza* State Action").  Dkt. 3 ("FAC"), ¶ 11;  *see also* Dkt. 32-3 at 50 (Exhibit 1 to the Mendoza RJNs).  Bhs represented WCQ as trial counsel during the *Mendoza* State Action where Mr. Mendoza was the named plaintiff and class representative.  FAC, ¶¶ 8-9, 11-12, 15.  On or about April 7, 2025, the *Mendoza* State Action culminated in a favorable judgment for Mr. Mendoza and the class he represented.  *See id.*, ¶¶ 11-12.  Capstone served as Mr. Mendoza's and class counsel in the *Mendoza* State Action.  *See, e.g.*, Dkt. 32-3 at 6, 50;  Dkt. 44-2 at 38, ¶¶ 1-2.  Bhs alleges that this judgment was in fact a "Void Judgment" because it was

wrongfully obtained by Mr. Mendoza and/or his counsel "committ[ing] fraud on the court." FAC, ¶ 58; *see also id.*, ¶¶ 58.c.–j. (providing examples some of which, viewed in the light most favorable to Plaintiff Bhs, appear to be alleging acts by Mr. Mendoza's counsel (and would otherwise be non-sensical)).

WCQ—the defendant at issue in the *Mendoza* State Action—is a California corporation that manufactures and distributes "silicon ingots and quartz" in California. FAC, ¶¶ 5-6. The defendant at issue in this action is Worldex, of whom WCQ is a wholly-owned subsidiary. FAC, ¶ 5. Worldex "is a Korean corporation engaged in international manufacturing, distribution, and sales of industrial consumables, materials, and parts. Their products include silicon ingots, quartz, alumina, sintered-SiC, Silicon Nitride, [and] Aluminum Nitride[.]" FAC, ¶ 5. On or about May 21, 2025, after Mr. Mendoza prevailed in the *Mendoza* State Action, Bhs alleges that "Worldex forced or otherwise made the decision for WCQ to terminate" Bhs's representation of WCQ. FAC, ¶¶ 12-13. Worldex is represented by O'Hagan in this case, and WCQ is now represented by O'Hagan in an appeal from the *Mendoza* State Action. *See* Dkt. 22-3 (WCQ's Notice of Appeal in the *Mendoza* State Action, filed on June 2, 2025 and served upon, *inter alia*, both Brian H. Song for Bhs and Daniel Qualls for O'Hagan); Dkt. 22-4 (Mr. Qualls's Notice of Appearance in the *Mendoza* State Action on July 1, 2025).

The crux of the instant case is this:  Bhs alleges that's its termination by WCQ was wrongfully caused by Worldex and that WCQ "owed unpaid legal bills" at termination. *See* FAC, ¶¶ 13-14, 24-55.  It alleges that this wrongful termination gives rise to five causes of action:

Count I:   intentional interference with contract;

Count II:  breach of contract via an alter-ego theory of liability;

Count III: breach of the covenant of good faith and fair dealing via the same theory;

Count IV: in the alternative, to the extent inconsistent with other allegations in the FAC but still via an alter-ego theory, a common count for the outstanding reasonable value of its services;  and

Count V:  also in the alternative and via an alter-ego theory, a claim for promissory estoppel and reliance damages.

Against Worldex, Bhs seeks to recover $8,000,000 it is allegedly owed, plus interest and costs. *See* FAC at Prayer for Relief, ¶¶ 1-3. As for Mr. Mendoza, Bhs seeks only (<u>Count VI</u>) an adjudication and a decree that the judgment obtained in the *Mendoza* State Action is void and vacated and an injunction restraining its enforcement (presumably against WCQ). FAC, ¶¶ 56-61; Prayer for Relief, ¶¶ 4-6.

### C.    The Parties' and Counsels' Other Relevant Cases

Relevant to the pending motions, this action is not the first time the Parties and/or counsel have been opposed to each other. The Court takes judicial notice of the following facts as undisputed matters of public record, in roughly chronological order.

First, in the *Mendoza* State Action, Bhs (on behalf of WCQ) opposed class certification by, among other things, submitting declarations from a supervisor (Eddy Lee) and a manager (Edward Guardado Jr.) in support of WCQ's therein-challenged meal break policy. *See* Dkt. 42-2 at 19-26, 27-35 (respectively). After the certification of six classes in the *Mendoza* State Action, Bhs unsuccessfully moved to disqualify Capstone from acting as class counsel "based upon an asserted conflict of interest created by representing the certified classes," specifically, "(1) nonexempt managers and supervisors" (such as Mr. Lee and Mr. Guardado) and "(2) other nonexempt employees." Dkt. 32-3 at 83-85 (Exhibit 3) (the Honorable Brad Seligman's decision denying without prejudice the motion to disqualify Capstone).

Second, on December 18, 2024 (prior to receiving the adverse judgment in the *Mendoza* State Action), Bhs filed suit in state court on behalf of Mr. Guardado and other WCQ employees who had opted out of the *Mendoza* State Action class. *See* Dkt. 32-3 at 165-82 (the "*Guardado* State Action"). The *Guardado* State Action sought damages against Capstone for interference with the objectors' enjoyment of WCQ's meal break policy (which was successfully challenged in the *Mendoza* State Action). *See id.* It was dismissed on March 25, 2025, when the Honorable Somnath Raj Chatterjee granted Capstone's anti-SLAPP motion. Dkt. 32-3 at 192-95.

Third, on February 12, 2025 and again prior to being discharged as WCQ's counsel, Bhs filed an action in this District on behalf of WCQ against the Honorable Judge Michael Markman (the judge presiding in the *Mendoza* State Action), the County of Alameda, the Alameda County

Superior Court, the State of California, Mr. Mendoza, Capstone and various individual attorneys at Capstone (the "*WCQ* Federal Action"). *See West Coast Quartz Corp. v. Markman, et al.*, No. 25-cv-2643-YGR (N.D. Cal. Feb. 12, 2025). On May 16, 2025, after entry of judgment in the *Mendoza* State Action, WCQ (via Bhs) filed a motion seeking to enjoin its enforcement due to its assertedly void nature. *Id.*, Dkt. 75. On May 21, 2025, the *WCQ* Federal Action was voluntarily dismissed by WCQ upon the termination of Bhs and the substitution of O'Hagan as counsel. *See id.*, Dkts. 83-85. On November 14, 2025, the Honorable Yvonne Gonzalez Rogers reopened the *WCQ* Federal Action to enter a stipulation between Capstone and WCQ as to anti-SLAPP Attorney's Fees and Costs. *Id.*, Dkt. 87.

Fourth, and again related to the first item, above, on June 9, 2025 and after being discharged as WCQ's counsel, Bhs filed an action in this District on behalf of Eddy Lee, essentially as a dissatisfied objector to the class, against Capstone, various individual attorneys at Capstone and the chief trial counsel for the State Bar of California (the "*Lee* Federal Action"). *See Lee v. Capstone Law APC, et al.*, No. 25-cv-4845-BLF (N.D. Cal. June 9, 2025). That case was, in relevant part, a suit in equity seeking to vacate the same, allegedly void judgment in the *Mendoza* State Action. *Id.*, Dkt. 1 at 11-14. The *Lee* Federal Action was voluntarily dismissed by Mr. Lee on July 30, 2025. *Id.*, Dkt. 39. Bhs—without Mr. Lee's buy-in—attempted to withdraw the notice of dismissal asserting, essentially, that WCQ, O'Hagan, Capstone or some combination thereof "coerced" Mr. Lee into withdrawing the action. *See id.*, Dkt. 40. The Honorable Beth Labson Freeman denied the attempted withdrawal on August 5, 2025. *Id.*, Dkt. 44 (explaining that, whatever the circumstances, "[w]hat is undeniably true in this case is that Counsel has no client wishing to pursue this case….").

Fifth and finally, on November 16, 2025, Bhs filed an action in this District on its own behalf against Judge Markman alone, seeking compensation for alleged violations of its First and Fourteenth Amendment Rights in connection with the State Action. *See Bhs Law LLP v. Markman*, No. 25-cv-9864-NC (N.D. Cal. Nov. 16, 2025). On November 19, 2025, the Court denied Plaintiff's request to relate that case to the instant action. *See* Dkt. 75.

////

### D.    Relevant Procedural History in this Action

On May 27, 2025, several days after being discharged as WCQ's counsel, Bhs filed the instant action, the essential facts of which are described in Section I.B., above.  *See, supra*, § I.B. Bhs completed purported service on Worldex on May 30, 2025, and Worldex filed its Motion to Dismiss or in the Alternative to Quash Service of Process ("Worldex's Motion") on June 30, 2025. Dkts. 10, 15-16.  Meanwhile, after some difficulties serving Mr. Mendoza and this Court's authorization of alternative service, (*see* Dkt. 8), Bhs served Mendoza via his counsel, Capstone, on July 1, 2025.  *See* Dkts. 8, 25.  Mr. Mendoza appeared and filed his Anti-SLAPP Motion to Strike or in the Alternative to Dismiss on July 22, 2025 ("Mendoza's Motion").  Dkt. 32.

In most actions, the procedural story would end there.  Here, however, as described in the Court's Order re Recent Filings (Dkt. 49), that was not the case.  The briefing was unusually acrimonious, no doubt reflecting the counsels' history briefly described in Section I.C., above.  It included, in relevant part, the filing of a Letter of Intent to File for Rule 11 Sanctions by Worldex, (Dkt. 41) and two "Motions for Sanctions" by Bhs seeking as their predominant sanction the disqualification of Capstone as Mr. Mendoza's counsel and O'Hagan as Worldex's counsel, (Dkts. 44-45, (the "MTDQ Capstone" and "MTDQ O'Hagan," respectively)).  In its letter Worldex pointed to deficiencies in Bhs's complaint that were purportedly serious enough to merit sanctions if Bhs did not withdraw or amend the Complaint.  Dkt. 41.  On August 12, 2025, Bhs filed an administrative motion to seal seeking to file (under seal) a second amended complaint.  Dkt. 47.

In sum, by August 13, 2025, "counsel for the Parties ha[d] collectively filed no fewer than 10 motions, letters-portending-motions or other such material."  Dkt. 49 at 1.  "Particularly in light of the recent spate of filed or threatened motions for sanctions and the oft-included *ad hominem* attacks from all sides against all others," the Court cleaned up the docket and ordered certain measures to maintain order in the case.  *Id.*  As relevant here, the Order Re Recent Filings:  (1) deferred any consideration of "sanctions as to frivolous arguments and misstatements," both as filed by Bhs and threatened by Worldex, until after its resolution of the pending motions to dismiss, (*id.* at 1-2);  (2) accepted Bhs's motions for sanctions as motions for disqualification only, (*id.*);  (3) authorized Bhs to seek leave to file a second amended complaint;  and (4) ordered that

1    "no party shall make any further filings in this case except those previously allowed by the Court,"

2    including oppositions and replies.  Dkt. 49 at 2-4.[3]

3          The Court now resolves the pending motions in this matter.

4    **II.      LEGAL STANDARDS**

5          **A.      Motions to Disqualify Opposing Counsel**

6          "[F]ederal courts apply state law in determining matters of disqualification."  *Reading*

7    *Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1049 (9th Cir. 2016) (cleaned up); *see also* Civil

8    L.R. 11-4(a)(1) (this District requires attorneys before it to "comply with the standards of

9    professional conduct required of members of the State Bar of California.").  Generally, a "party

10   seeking disqualification must establish by a preponderance of the evidence that there exists a prior

11   representation creating a conflict in the current case."  *Google LLC v. NAO Tsargrad Media*, No.

12   24-cv-05423-EJD, 2024 WL 4844799, at *4 (N.D. Cal. Nov. 19, 2024) (citation omitted).

13         "As a general rule, courts do not disqualify an attorney on the grounds of conflict of

14   interest unless [a] former [or current] client moves for disqualification."  *See Kasza v. Browner*,

15   133 F.3d 1159, 1171 (9th Cir. 1998).  However, California law recognizes a narrow exception to

16   the former or current client standing rule:  A court may disqualify an attorney at the urging of a

17   third-party "where the ethical breach so infects the litigation in which disqualification is sought

18   that it impacts the moving party's interest in a just and lawful determination of her claims."  *E.g.*,

19   *TransPerfect Glob., Inc. v. MotionPoint Corp.*, No. 10-cv-02590-CW (JCS), 2012 WL 2343908,

20   at *7 (N.D. Cal. June 20, 2012) (quoting *Colyer v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal.

21   1999)).  Even under the *Colyer* exception, "a non[-]client litigant must establish a personal stake

22   in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article

23   III."  *Colyer*, 50 F. Supp. 2d at 971 (citation omitted).

24         Moreover, "[b]ecause motions to disqualify can be abused to deprive a party of her chosen

25

26   _____

27   [3] The Court notes Bhs's subsequent "sincere apologies to the Court" and explanation of frustration
     at what it perceives to be O'Hagan's and Capstone's "varying misstatements of laws and/or facts."

28   Frustration notwithstanding, parties before the Court should point out perceived misstatements of
     law and/or facts civilly and succinctly.  To the Parties' and counsels' credit, the subsequent filings
     of all Parties have been significantly more civil and somewhat more succinct.

1    counsel, courts have the discretion to disqualify or not." *Google v. NAO Tsargrad*, 2024 WL

2    4844799, at *4 (collecting cases).  In sum, the Court must balance a party's choice of counsel

3    against preserving "public trust in the scrupulous administration of justice and the integrity of the

4    bar." *Id.* (cleaned up).

5    **B.    Motion to Dismiss Under Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

6        "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether

7    the court has subject matter jurisdiction." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 900 (N.D.

8    Cal. 2020).  Subject matter jurisdiction is lacking where there is no case or controversy before the

9    Court, including where the plaintiff lacks standing under Article III.  *See id.*  "A Rule 12(b)(1)

10   jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

11   1039 (9th Cir. 2004).  In a "facial" 12(b)(1) challenge, as is presented here, the Court assumes a

12   plaintiff's factual allegations to be true and draws all reasonable inferences in plaintiff's favor.

13   *Oracle Corp. v. ORG Structure Innovations LLC*, No. 11-cv-03549 SBA, 2012 WL 12951187, at

14   *3 (N.D. Cal. Mar. 30, 2012) (citing *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

15   **C.    Motion to Quash Service Under Rule 12(b)(5)**

16       Rule 12(b)(5) authorizes dismissal for "insufficient service of process."  Fed. R. Civ. P.

17   12(b)(5).  "Once service is challenged, plaintiffs bear the burden of establishing that service was

18   valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  "The court may

19   consider evidence outside the pleadings in resolving a Rule 12(b)(5) motion." *Fairbank v.

20   Underwood*, 986 F. Supp. 2d 1222, 1228 (D. Or. 2013).

21   **D.    Motion to Dismiss Under Rule 12(b)(2) – Lack of Personal Jurisdiction**

22       Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action for "lack of

23   personal jurisdiction."  Fed. R. Civ. P. 12(b)(2).  "[T]he plaintiff bears the burden of establishing

24   that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where, as

25   here, the Court "decides the motion without an evidentiary hearing," the Court "only inquires into

26   whether the plaintiff's pleadings and affidavits make a prima facie showing of personal

27   jurisdiction." *Id.* (cleaned up).  "Uncontroverted allegations in the plaintiff's complaint must be

28   taken as true," and "[c]onflicts between the parties over statements contained in affidavits must be

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    resolved in the plaintiff's favor." *Id.*

2        **E.        Motion to Dismiss Under Rule 12(b)(6) – Failure to State a Claim**

3        Rule 12(b)(6) provides for a dismissal of an action for "failure to state a claim upon which

4    relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the

5    plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*,

6    550 U.S. at 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that

7    add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

8    678 (2009).  For a 12(b)(6) motion, all well-pleaded allegations of material fact are accepted as

9    true and construed in the light most favorable to the non-moving party. *Padilla v. Yoo*, 678 F.3d

10   748, 757 (9th Cir. 2012). However, a court is not "required to accept as true allegations that are

11   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis.*

12   *Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  In deciding a motion under 12(b)(6), a court may

13   consider only "the complaint, materials incorporated into the complaint by reference, and matters

14   of which the court may take judicial notice." *Metzler*, 540 F.3d at 1061. (9th Cir. 2008).

15       **F.        California Civil Procedure Code § 425.16 – Anti-SLAPP Motions to Strike**

16       California Civ. Proc. Code § 425.16(b)(2) provides:  "A cause of action against a person

17   arising from any act of that person in furtherance of the person's right of petition or free speech

18   under the United States Constitution or the California Constitution in connection with a public

19   issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has

20   established that there is a probability that the plaintiff will prevail on the claim." Section 425.16(a)

21   states:  "The Legislature finds and declares that it is in the public interest to encourage continued

22   participation in matters of public significance, and that this participation should not be chilled

23   through abuse of the judicial process. To this end, this section shall be construed broadly."  The

24   Ninth Circuit has "confirmed that defendants sued in federal courts can bring anti-SLAPP motions

25   to strike state law claims and are entitled to attorneys' fees and costs when they prevail." *Verizon*

26   *Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).  "The purpose of

27   the anti-SLAPP statute is "to allow early dismissal of meritless first amendment cases aimed at

28   chilling expression through costly, time-consuming litigation."  *Id.* at 1090.

1

### G.    Leave to Amend

Motions for leave to amend are governed by Rule 15, and courts "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Courts consider the *Foman* factors in assessing whether leave to amend should be granted, namely:  (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendment; (4) undue prejudice to the opposing party; or (5) futility of amendment.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Of course, where a court finds that dismissal is warranted, it should ordinarily "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, at this early stage where prejudice to the defendants is likely minimal, the Court's primary concern is whether amendment would be futile.  *Cf. id.*

## III.    DISCUSSION

Because a motion to disqualify opposing counsel logically must come before motions filed by the counsel at issue, the Court first turns to Bhs's motions.  *See, e.g.*, *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1103 (E.D. Cal. 2015) (noting that "CCI's motion to disqualify [Steadfast's counsel] must be decided before" the co-pending motion for leave to amend and motion for relief from magistrate judge order filed by Steadfast).  Thereafter, because the Court denies both motions, the Court turns to Worldex's Motion and then to Mr. Mendoza's Motion.  Finally, the Court addresses Bhs's motion for leave to amend its complaint.

### A.    Bhs's Motion to Disqualify Capstone is Denied

Bhs's MTDQ Capstone is based upon two asserted violations of the California Rules of Professional Conduct ("CRPC"):  Rules 1.7 and 3.7(a).  The Court **DENIES** the MTDQ Capstone for two simple reasons:  first, Bhs lacks general standing to seek Capstone's disqualification; second, though it is possible that eventually grounds for disqualification may arise, such a motion is, at this time, premature.  It is undisputed that Bhs is not a former or current client of Capstone, and thus, as a general rule, Bhs lacks standing to seek Capstone's disqualification.  *See Kasza*, 133 F.3d at 1171.  Thus, it may only seek Capstone's disqualification under the *Colyer* exception.

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    As to CRPC § 1.7, Bhs seeks to assert claims on Mr. Mendoza's behalf.  Dkt. 44-1 at 8

2    ("Defendant Mendoza has a nonwaivable actual conflict of interest against Capstone.  For

3    Defendant Mendoza should have a claim against Capstone arising from Capstone's misconduct

4    from [the] Mendoza Action.").  But Bhs does not have a "personal stake" in any claim by

5    Mr. Mendoza against Capstone, whatever the conduct in the underlying action.  *Contra Colyer v.*

6    *Smith*, 50 F. Supp. 2d at 971.  That is a textbook example of when the client holds the right to

7    bring such a motion.  Mr. Mendoza has not done so, and Bhs lacks standing.

8    Second, as to CRPC Rule 3.7(a), which states that a "lawyer shall not act as an advocate in

9    a trial in which the lawyer is likely to be a witness," the MTDQ has more merit.  As the plaintiff in

10   this action, Bhs has a personal stake sufficient to satisfy the constitutional minimum of Article III

11   in disqualifying an attorney whom it will need to depose or ultimately call at trial.[4]  Bhs further

12   argues that "Capstone's role in this Action is too central to find any workable exception," because

13   "[a]lmost all of the wrongful grounds on which the Sixth Cause of Action (to which Mendoza is

14   solely named as defendant) is based on [] wrongful actions of Capstone."  Dkt. 44-1;  *see also,*

15   *supra*, § I.B (inferring the same allegation).  However, the Court is not convinced that such

16   disqualification is required nor that it is necessary as to the entire firm.  For example, CRPC Rule

17   3.7(a) permits the lawyer to act as a witness if he or she "has obtained informed written consent

18   from the client," and Rule 3.7(b) provides that disqualification under this rule is not *automatically*

19   imputed to an entire firm.  Disqualification at the outset is premature.

20   Finally, the Court touches on Bhs's assertions of potential instances of false statements and

21   fabrications to this Court.  *See* Dkt. 44-1 at 9-11.  Such allegations of ethical breaches are serious,

22   and the Court would not hesitate to issue appropriate sanctions if warranted.  Bhs's current

23   submissions, however, reflect inferences drawn from inconclusive facts.  Moreover, it is not clear

24   that Bhs has standing to pursue *disqualification* as the appropriate sanction on the facts presented.

25   *See, e.g., TransPerfect Glob.*, 2012 WL 2343908, at *7 (the third party's "personal stake" must go

---

[4] For example, comment 3 to CRPC Rule 3.7 explains that "[n]otwithstanding a client's informed
written consent, courts retain discretion to take action, up to and including disqualification of a
lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being
misled or the opposing party from being prejudiced."  CRPC Rule 3.7, Comment [3].

12

1  "beyond the general interest in the fair administration of justice.").  In any case, as indicated in the

2  Court's Order Re Recent Filings, the Court **DEFERS** any "sanctions as to frivolous arguments

3  and misstatements" until after its ruling on the motions to dismiss.  Dkt. 49 at 2.[5]

4       In sum, the MTDQ Capstone is **DENIED** as follows.  It is **DENIED** as to CRPC § 1.7

5  (any conflict between Capstone and Mendoza), and Bhs may not re-raise this issue.  It is **DENIED**

6  **without prejudice** as to CRPC § 3.7(a), and Bhs may re-raise lawyer-as-witness disqualification

7  as to *specific* Capstone attorneys prior to the deposition of such attorneys in this case, if any.  It is

8  **DEFERRED** as to any false statements or frivolous arguments made by Capstone to this Court

9  (the Court resolves this issue in Section IV.A., below).

10       **B.    Bhs's Motion to Disqualify O'Hagan is Denied**

11       With regard to O'Hagan, counsel for Worldex, the situation is similar but with a few

12  distinctions.  First, although Bhs is not a current or former client of O'Hagan, since O'Hagan

13  replaced Bhs as counsel for WCQ (and, if Bhs's alter ego theories are supported, Worldex),

14  neither is Bhs a wholly unrelated party.  While this does not confer general standing on Bhs to

15  pursue O'Hagan's disqualification, it is relevant to Bhs's personal stake in the matter under *Colyer*

16  because this case is an active fee dispute between Bhs and Worldex (as parent of WCQ).  Second,

17  Bhs's grounds for disqualifying O'Hagan overlap with those raised against Capstone but raise

18  some distinct issues.

19       Bhs seeks to disqualify O'Hagan based on CRPC Rule 1.7, CRPC Rule 3.7(a), and CRPC

20  Rule 3.3(a).  *See, generally*, Dkt. 45-1.  The underlying cause for disqualification under all of

21  these rules, however, is Bhs's contention that O'Hagan submitted false and misleading

22  declarations from Youngsoo Bae ("Mr. Bae") and Steve Ko ("Mr. Ko") in support of its motion to

23

24  ───────────────
    [5] In reply, Bhs argues that there is no standing issue because "[t]he Instant Motion is not a motion
25  for disqualification; rather, it is motion for sanction" and criticizes Capstone for misleading
    arguments to the contrary.  Bhs is admonished to read the Court's orders carefully.  Capstone's
26  arguments expressly recognize what the Court found in its Order Re Recent Filings:  "the only
    sanction sought in [Dkt. 44] is disqualification of counsel," and, accordingly, "the motions for
27  sanctions … are predominantly motions to disqualify counsel."  Dkt. 49 at 1-2.  It is self-evident
    that a party cannot evade standing requirements merely by casting a motion for disqualification as
28  "one for sanction, which seeks disqualification as the appropriate sanction," as Bhs attempts to do.
    *Contra* Dkt. 64 at 7-8.

United States District Court
Northern District of California

United States District Court
Northern District of California

dismiss. *Id.* (referring to Dkts. 15-2 and 15-3, "Bae Decl." and "Ko Decl.," respectively). Bhs argues that: (1) under Rule 1.7, submitting a false or misleading declaration is adverse to a client's interest;[6] (2) Bhs will now have to depose O'Hagan on these declarations, thus implicating the attorney-advocate rule; and (3) O'Hagan has violated the requirement of candor to the tribunal.

The Court's reasoning as to Rules 1.7 and 3.7(a) is the same as with regard to Capstone. *See, supra*, § III.A. The Court finds that it is Worldex—not Bhs—who holds the right to terminate O'Hagan under Rule 1.7. Bhs lacks standing to seek to vindicate Worldex's rights by disqualifying O'Hagan in this way. As to Rule 3.7(a), the Court finds that, while Bhs does have standing to pursue disqualification, it has not shown that the testimony of any O'Hagan attorneys (let alone the entire firm) will be required and is so necessary that it "it impacts the moving party's interest in a just and lawful determination of [its] claims." *Contra Colyer*, 50 F. Supp. 2d at 969. In any case, disqualification would be premature prior to answering questions such as whether Worldex might consent to O'Hagan's attorney's testifying as permitted under the rule.

Finally, as to Rule 3.3. and Bhs's assertions of false statements made by O'Hagan, because this issue is intertwined with the Court's determination of Worldex's Motion, the Court **DEFERS** discussion until after resolution of the motion to dismiss (the Court addresses this issue in Section IV.B., below). In sum, the MTDQ O'Hagan is **DENEID** as to CRPC Rule 1.7, **DENIED without prejudice** as to CRPC Rule 3.7(a).

### C. Worldex's Motion to Quash Service or in the Alternative Dismiss

The Court now addresses the arguments raised in Worldex's Motion, in turn.

#### 1. Worldex's Challenges to Standing and Subject Matter Jurisdiction are Persuasive in Part: Bhs Lacks Standing to Pursue its Contingency Fee Claims But May Pursue its Fixed Fee Claims

"A federal court is a court of limited jurisdiction and, as a threshold matter, must have

---

[6] Bhs also makes reference in the MTDQ O'Hagan and in its other papers to an argument that O'Hagan acts adverse to Worldex's interest when it "directly and indirectly [] oppose[s] and undermine[s] [Bhs's] Sixth Cause of Action" seeking to vacate the State Action judgment. *E.g.*, Dkt. 45-1 at 7. However, even without considering the persuasiveness of Worldex's arguments in opposition, Bhs lacks standing to pursue *disqualification* under such a theory.

United States District Court
Northern District of California

1    before it a case or controversy." *Flast v. Cohen,* 392 U.S. 83, 94 (1968).  Accordingly, the Court

2    first turns to Worldex's arguments directed to the Court's subject matter jurisdiction.

3            Worldex raises four arguments related thereto.  First, it argues that Bhs is the wrong

4    plaintiff as to Count VI – *i.e.*, that Bhs as a law firm "does not have standing to seek an order

5    vacating a judgment entered against [its] former client." Dkt. 15-1 at 13.  Second, Worldex argues

6    that, as to Counts I-V, Bhs's has not alleged sufficient causation for standing because it has not

7    alleged that Worldex caused WCQ's nonpayment of fees but merely that Worldex caused Bhs's

8    termination.  *Id.*[7]  Third, Worldex argues that to the extent Bhs seeks recovery of its contingency

9    fee, such a claim lacks standing because any recovery would require undue speculation and

10   conjecture as the result had the *Mendoza* State Action judgment been void.  *Id.* at 14-15;  Dkt. 28

11   at 12-15.  Finally, in its reply, Worldex argues for the first time that the Court should abstain from

12   hearing this case under the *Younger* doctrine.  Dkt. 28 at 16-19 (citing *Younger v. Harris,* 401 U.S.

13   37 (1971)).  Although the Court ordinarily declines to consider arguments raised for the first time

14   on reply, because this issue goes to the Court's ability to hear this case, the Court accepted

15   supplemental briefing from Bhs on the question of the *Younger* doctrine and elected to consider

16   the issue.  Dkt. 37 (Court Order);  Dkt. 46 (Bhs's Supplemental Brief).

17                    **a.    Worldex Does Not Have Standing to Challenge Count VI**

18           As to Worldex's first argument, the Court agrees with Bhs that *Worldex* does not have

19   standing to challenge Bhs's sixth cause of action.  That cause of action is asserted solely against

20   Mr. Mendoza, (FAC at 7 and Prayer for Relief), and it is not clear how Worldex would be injured

21   if, hypothetically, Bhs prevailed in vacating the judgment against its subsidiary WCQ.  Moreover,

22   Worldex has failed to include a *single* case or authority in support of its argument on this ground

23   in its original motion, contrary to this District's local rules.  *See* Civil L.R. 7-4(a)(5) ("[A] brief or

24   memorandum … in support, opposition, or reply to a motion must contain … argument by the

25

26   _____

27   [7] Worldex also, without explanation, argues that Bhs lacks standing to challenge WCQ's
     termination of Bhs because it was "consistent with lawful conduct."  A claim that WCQ and/or
     Worldex's conduct was *lawful* is not a basis to assert lack of standing;  rather, it is a basis to seek

28   dismissal for failure to state a claim, as Worldex does elsewhere in its Motion (*see* Dkt. 15-1 at
     12) and as the Court addresses in Section III.C.4., below.

1   party, **citing pertinent authorities**."  (Emphasis added)).[8]

2       Accordingly, Worldex's Motion is **DENIED** on this ground, although the Court

3   independently considers whether Bhs has standing to pursue its sixth cause of action in relation

4   to Mr. Mendoza's Motion, below.  *See, infra*, § III.D.1.

5               **b.**      **Bhs Lacks Standing to Pursue its Claims for Non-payment of
                            Fees (Counts I-V) as Alleged in the First Amended Complaint**

6

7       Article III standing requires claimants satisfy three elements:

8           (1) the plaintiff suffered an "injury in fact" that is concrete and
            particularized and actual or imminent, not conjectural or hypothetical;
9           (2) the injury is fairly traceable to the challenged action of the
            defendant; and (3) it is likely, as opposed to merely speculative, that
10          the injury will be redressed by a favorable decision.

11  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "The party invoking federal

12  jurisdiction bears the burden of establishing these [standing] elements."  *Id.* at 561.  Here, as to

13  Counts I-V of Bhs's complaint (which are asserted against Worldex), Worldex challenges the

14  "fairly traceable" (*i.e.*, causation) prong.  Dkt. 15-1 at 13.  Specifically, Worldex argues that "the

15  allegation that Worldex caused WCQ to end an attorney engagement agreement with plaintiff is

16  not to say that Worldex caused WCQ to fail to pay fees due under that same agreement[,] … and it

17  would be entirely speculative for Plaintiff to make such a claim."  *Id.*

18      The Court agrees with Worldex in part.  The Court notes that Worldex's challenge is a

19  facial one and, as such, Bhs's allegations are taken as true.  *See Oracle Corp.*, 2012 WL

20  12951187, at *3 (citing *Doe v. See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).  Even so, Bhs does not

21  allege that, in addition to causing WCQ to terminate the representation, Worldex caused WCQ to

22  refuse to pay the allegedly unpaid fees.  *See, generally*, FAC, ¶¶ 8-19.  This means that, as

23  pleaded, there is an insufficient causal link between Worldex's alleged conduct and the injury

24  suffered by Bhs.  *See Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939,

25  953 (9th Cir. 2013) (the causation requirement for constitutional standing means that "the alleged

26

27  _____

    [8] Although Worldex included authorities and argument in its brief in reply, (Dkt. 28), the Court
    declines to consider these authorities.  A party may not simply flag an issue in its opening motion,
28  force the opposing party to brief the issue "in the dark," and then unload with a salvo of authority
    upon reply.

United States District Court
Northern District of California

United States District Court
Northern District of California

injury be "fairly traceable to the challenged action of the defendant," rather than to "the independent actions of some third party not before the court," (quoting *Lujan*, 504 U.S. at 560)).

Accordingly, Worldex's Motion is **GRANTED** as to dismissal of Counts I-V for lack of traceability.  However, the Court finds that amendment by Bhs as to this deficiency would not be futile and **GRANTS leave to amend** as indicated in Section III.E., below.  Thus, the Court's analysis does not end here.

### c. Bhs's Claims for Recovery of its Contingency Fee are too Speculative to Support a Case or Controversy

As to its injuries, Bhs seeks asserts two categories of damages against and injuries by[9] Worldex:  Bhs seeks "the value of the services rendered AND the value of contingent fees."  FAC, Prayer for Relief, ¶ 1.  As an initial matter, while Worldex reads the FAC to be alleging a total of $8,000,000 in contingent fees, (Dkt. 15-1), Bhs argues in opposition that it "seeks **both** fixed fees and contingent fees," with the $8 million representing unpaid fees "separat[e] from the undisclosed amount of the contingent fees."  Dkt. 21 at 20-22 (emphasis in original).

"Proper characterization of the injury claimed by Bhs is critical.  *See also Corrales v. Dutschke*, 760 F. Supp. 3d 1053, 1061 (S.D. Cal. 2024) ("The way in which the Court defines Plaintiff's injury can be dispositive of whether or not he has Article III standing.").  "[N]o one disputes that a 'pecuniary injury is clearly a sufficient basis for standing.'"  *Corrales v. Dutschke*, 760 F. Supp. 3d 1053, 1061-62 (S.D. Cal. 2024) (quoting *Cent. Ariz. Water Conservation Dist. v. Env't Prot. Agency*, 990 F.2d 1531, 1537 (9th Cir. 1993)).  Yet, an injury which requires the Court to guess at the judgment of an independent decisionmaker (*e.g.*, a state trial judge) is too speculative to support standing.  *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2013) ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment. … We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent

---

[9] To the extent Bhs's injury might be considered to be the termination/breach of contract itself, Bhs has disclaimed such a reading of its complaint in an effort to avoid dismissal.  *See* Dkt. 21 at 15, § D.2. (titled "Nonpayment, Not Termination, is Breach; WDX Misleads").

actors.").  Here, the Court finds the FAC's statement ambiguous but construes the ambiguity in favor of Bhs because a "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor…." *Fruci & Assocs., PS v. A10 Cap. LLC*, 510 F. Supp. 3d 962, 967 (W.D. Wash. 2020).  Accordingly, the Court infers that Bhs has alleged a hybrid fee structure with WCQ. *See* FAC, ¶ 22 ("WCQ promised Plaintiff the Deferred Market Rate Fees as well as the Contingency Fees, contingent on, among other things, the successful defense of the case.").

Accordingly, the Court agrees with Worldex in part.  The Court is persuaded that contingent fees which would become payable to Bhs only upon its successful defense against the *Mendoza* State Action are too speculative to support relief.  *See Corrales*, 760 F. Supp. 3d at 1061-62 (in a case where Plaintiff, an attorney proceeding *pro se*, had "Fee Agreement [of] a hybrid quality, meaning Plaintiff earned both an hourly fee as well as a contingency fee," Plaintiff had "not suffered a pecuniary injury [as to his asserted contingent fee interest] because he has not been deprived of any fees to which he is entitled. Only after [Plaintiff's client] recovers its funds from the Commission will Plaintiff's right to collect his fees be triggered.").  In other words, even assuming that Bhs could successfully challenge and vacate the *Mendoza* State Action judgment by way of this action, because Bhs alleges that the fee was "contingent on, among other things, the successful defense of" the underlying case, Bhs would need to first prevail in such a defense before its injury crystalized.[10]    However, Bhs's injury as to its fixed fees is not speculative.

Thus, the Court **GRANTS IN PART** and **DENIES IN PART** Worldex's Motion on this ground.  The Court finds that Bhs has standing to pursue its claims for non-payment of its fixed fees but not for failure to pay the contingency fees.  As any attempt to amend as to the contingent-fee injury would be speculative, dismissal of such claims is **without leave to amend**.

////

---

[10] Bhs's only argument to the contrary is that, where a party tortiously interferes with a plaintiff's performance of a contingency under a contract, the tortfeasor cannot "take advantage" of the lack of performance. *See* Dkt. 21 at 21.  While this principle is correct as a general matter of contract law for assessing liability, Bhs cites no authority from any court applying it to the Article III standing inquiry for contingent attorney's fees. *See id.*  The Court is not persuaded that the general maxim controls over specific authority.

United States District Court
Northern District of California

### d.      Worldex's *Younger*-Doctrine Arguments are Moot

Finally, with regard to Worldex's argument that the Court should abstain from exercising jurisdiction under the *Younger* doctrine, this argument is moot as to Worldex.  Specifically, as Bhs points out in its opposition, "it isn't necessary for [it] to even challenge the void Mendoza Judgment for the purpose of First through Fifth Causes of Action," insofar as Bhs alleges unpaid fixed fees.  *See* Dkt. 21 at 17.  The Court agrees, and the Court has found Bhs lacks standing to pursue its speculative contingent fee.  *See, supra*, § III.C.1.c.

Accordingly, Worldex's arguments that Bhs cannot pursue vacatur of the *Mendoza* State Action judgment under the *Younger* doctrine are moot, because all of Bhs's claims based on its contingency fee (the only fee which might implicate vacatur of that judgment) have been dismissed.  Thus, Worldex's Motion is **DENIED as moot** as to this ground.

### 2.      Worldex Was Properly Served via its General Manager, WCQ

"Rule 4 provides three alternatives for service of foreign corporations, partnerships, and other unincorporated associations."  *SVC-Napa, L.P. v. Strategy Resort Fin., Inc.*, No. 06-cv-03561-SI, 2006 WL 2374718, at *1 (N.D. Cal. Aug. 16, 2006).  Service may be effectuated "pursuant to (1) the law of the state where the district court is located or of the state where service is effected, (2) by delivering a copy of the summons and complaint in a judicial district of the United States to "an officer, a managing or general agent, or to any other agent authorized by appointment or by the law to receive service of process or (3) an internationally agreed method for effective service such as the Hague Convention."  *Id.* (citing Fed. R. Civ. P. 4(e)(1), (h)(1) and (f)(1), respectively).  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  *Brighton Collectibles, Inc. v. Winston Brands, Inc.*, No. 11-cv-2191-GPC (WMC), 2013 WL 394060, at *5 (S.D. Cal. Jan. 30, 2013) (quoting *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)).

To attempt to serve Worldex, Bhs effectuated personal service on Steve Ko at WCQ's corporate offices in Fremont, California on May 30, 2025.  Dkt. 10;  *see also* Dkt. 21 at 5.  Mr. Ko is undisputedly WCQ's agent for service of process and its Director of Global Finance.  *Compare* Dkt. 21 at 5 (Bhs's opposition (citing Dkt. 13-1 at 7;  Dkt. 21-4)) *with* Dkt. 28 (Worldex's reply)

19

United States District Court
Northern District of California

1    *and* Ko Decl., ¶ 1.  The Parties' arguments center around whether or not Mr. Ko was an employee

2    of Worldex itself as well, with Worldex relying on Mr. Ko's declaration to argue he was not and

3    Bhs relying on Mr. Ko's business card to argue that he was (or at least, held himself out to be).

4    *Compare* Dkt. 15 at 9-10 *with* Dkt. 21 at 10-11.  The Parties further argue whether Worldex is an

5    alter ego for WCQ, as discussed by the Court in Section III.C.4.a., below, which would also

6    impact the propriety of serving Worldex via WCQ's Director of Global Finance.

7           All of these arguments are needlessly complicated.  "[S]ervice of process is not limited

8    solely to officially designated officers, managing agents, or agents appointed by law for the receipt

9    of process."  *Direct Mail Specialists*, 840 F.2d at 688.  Service may be effectuated by, *inter alia*,

10   serving a corporation's general manager – which "has been interpreted to include any agent of the

11   corporation of sufficient character and rank to make it reasonably certain that the defendant will be

12   apprised of the service made."  *Brighton Collectibles*, 2013 WL 394060, at *6 (cleaned up).

13   "General managers may be domestic distributors, salesmen or advertisers, or customer service

14   liaisons of foreign manufacturers … as long as the domestic entity provides the foreign entity an

15   open channel for the regular flow of business from the foreign entity into California."  *Id.*

16   (collecting cases where, *e.g.*, "Toyota America, a distributor, was held to be a 'general manager'

17   for Toyota Japan," and where "service on subsidiary of foreign company was proper as subsidiary

18   was the American face of Defendant.").

19          Here, based on the allegations in the FAC and evidence submitted by Bhs, the Court

20   concludes that WCQ is the Californian distributor and face of Worldex.  FAC, ¶¶ 5-6;  *see also*

21   Dkt. 13-1 at 7 (business card of Steve Ko).  Moreover, the companies are closely intertwined:  Mr.

22   Ko's business card announces him as the Director of Global Finance for both WCQ and Worldex

23   (regardless of whether he actually serves the role for both companies), (Dkt. 13-1 at 7);  and there

24   is an actual unity of other corporate officers, with Mr. Youngsoo Bae serving as Secretary and

25   CFO of WCQ while serving as Vice President of Worldex and his father Johng Sik Bae serving as

26   CEO of both companies, (*compare* Dkt. 15-3, ¶ 1 *with* 21-4 at 2 *and* 21-1, ¶¶ 9-10).  The Court

27   thus concludes that WCQ is at least a general manager of Worldex.  Accordingly, service upon

28   Worldex was properly effectuated by serving WCQ, which in turn was properly effectuated by

serving Steve Ko, WCQ's agent for service of process.  In so deciding, the Court is guided by the

Ninth Circuit's guidance that "service can be made 'upon a representative so integrated with the

organization that he will know what to do with the papers. Generally, service is sufficient when

made upon an individual who stands in such a position as to render it fair, reasonable and just to

imply the authority on his part to receive service.'"  *Direct Mail Specialists*, 840 F.2d at 688

(internal citation omitted).  Mr. Ko is undoubtedly such an individual as a registered agent for

service of process for WCQ who would thus be familiar with receiving service and ensuring that

WCQ and Worldex received notice.  Worldex's Motion insofar as it seeks to quash service is

**DENIED**.

### 3.    The Court has General Jurisdiction Over Worldex as an Alter Ego of WCQ for Counts II-V and Specific Jurisdiction to Adjudicate Count I

> There are two limitations that restrict a court's power to exercise personal jurisdiction over a nonresident defendant: the constitutional principles of due process and the applicable state personal jurisdiction rule.  The Ninth Circuit has held that because California's personal jurisdictional rule is 'coextensive with the outer limits of due process,' personal jurisdictional inquiries under California law are constrained solely by constitutional principles.

*Payrovi v. LG Chem Am., Inc.*, 491 F. Supp. 3d 597, 602 (N.D. Cal. 2020) (quoting *Sher v.*

*Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990)).  Due process requires that a nonresident defendant

have sufficient "minimum contacts" with the forum state "such that maintenance of the suit does

not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).  Generally, personal

jurisdiction may be either general or specific jurisdiction.  *Doe v. Unocal Corp.*, 248 F.3d 915,

923 (9th Cir. 2001), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117 (2014).

"When the defendant's activities in the forum state are substantial, continuous and systematic, a

court may exercise general jurisdiction over the defendant, even if the cause of action is unrelated

to defendant's contacts with the forum."  *Payrovi*, 491 F. Supp. 3d 597 at 603 (citing *id.* at 923).

A defendant may also be subject to specific jurisdiction if the defendant "has sufficient contacts

with the forum state in relation to the cause of action."  *Id.* (quoting *Sher*, 911 F.2d at 1360).

Worldex's Motion, insofar as it relates to personal jurisdiction, is a bare bones challenge

1    asserting that:  Worldex is a South Korean corporation headquartered in the Republic of Korea, it

2    has no employees, offices or operating facilities in the United States, and it does not have, and has

3    not had, a registered agent for service of process in California.  Dkt. 15-1 at 10-11 (citing Bae

4    Decl., ¶¶ 2-3).  In opposition, Bhs does not dispute these facts but argues that the "Court has

5    personal jurisdiction over W[orldex] in two ways:  first, the Court has general jurisdiction over

6    Worldex because it is the alter ego of its local subsidiary, WCQ, a California corporation;  and,

7    second, the Court has specific jurisdiction over Worldex because, in the case at bar, Worldex

8    "manipulated the affairs of [its] subsidiary to the detriment of [plaintiff]."  Dkt. 21 at 12

9    (analogizing to a California state supreme court case);  *see, generally*, *id.* at 11-13.  The Court

10   agrees with Bhs.

11          First, although it is well established that "[t]his Court cannot impute [a] parent company's

12   contacts to [its] subsidiary, or vice versa, absent allegations of agency, alter ego, or a similar

13   relationship," (*see Payrovi*, 491 F. Supp. 3d at 603), Bhs has made such allegations here.  Four of

14   Bhs's five causes of action against Worldex rely on alter ego allegations.  *See* FAC, ¶¶ 31-55.

15   While a "plaintiff cannot simply rest on the bare allegations of its complaint [in making a showing

16   of personal jurisdiction,] uncontroverted allegations in the complaint must be taken as true."

17   *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation

18   marks and citation omitted).  Here, not only does Worldex fail to dispute the allegations, it leans

19   into them in its reply for other purposes.  *See* Dkt. 28 at 7-8 (Section 3:  "Worldex As an Alter Ego

20   of WCQ Is A BHS Client").  Accordingly, while the Court does not decide that Worldex is an

21   alter ego of WCQ,[11] it takes Bhs's uncontroverted allegations as true at the pleading stage.

22   Accordingly, the Court imputes WCQ's contacts with the state of California, which are pervasive,

23   to Worldex and finds that it has general jurisdiction as to Worldex at least for Counts II-V (where

24   such an alter ego relationship is alleged).

25          Second, as to Count I, the Court has specific jurisdiction over Worldex.  As to the

26   "minimum contacts" analysis for specific jurisdiction, such jurisdiction is proper if

27   _____

28   [11] The disregard of corporate form discussed in relation to Mr. Ko's business card and the unity of
     other executives lends at least some plausibility to such allegations.  *See, supra*, § III.C.2.

United States District Court
Northern District of California

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The Ninth Circuit has further "refined [the first prong] to mean whether [a defendant] has either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities toward the forum." *Id.* Purposeful direction, relevant here, requires a defendant in the tort context to "have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* at 1156.

Here, Count I of the FAC alleges an intentional tort. *See* FAC, ¶¶ 24-30. According to Bhs's allegations, Worldex "forced or otherwise made" WCQ terminate Bhs's representation in the *Mendoza* State Action. Such an act is allegedly intentional, certainly expressly aimed at the forum state (as it directs the activities of a California corporation in relation to a California state court action) and foreseeably caused harm (the non-payment of fees) likely to be suffered in California (*i.e.*, by a law firm known to Worldex to be California-based).[12] Thus, Worldex purposely directed its activities into California, at least as alleged in Count I.

As to the second prong of the specific jurisdiction analysis, the claim for intentional interference with contract arises out of the alleged activities. *See* FAC, ¶¶ 24-30. Finally, given overlap in WCQ's and Worldex's officers and for the same reasons as discussed in Section III.C.2., the Court concludes that exercising jurisdiction over Worldex is reasonable in this case.

Accordingly, having determined that the Court has general personal jurisdiction over Worldex as an alleged alter ego of WCQ for Counts II-V and specific personal jurisdiction over Worldex in relation to Bhs's claim for intentional interference with contract (Count I), the Court **DENIES** Worldex's Motion insofar as it seeks dismissal for lack of personal jurisdiction.

---

[12] The Court also notes that Worldex does not respond to any of Bhs's arguments as to personal jurisdiction in its reply. *See* Dkt. 28.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.    Worldex's Arguments for Dismissal for Failure to State a Claim

Finally, Worldex advances two arguments in seeking dismissal of Bhs's complaint for failure to state a claim.  First, Worldex argues that Bhs did not comply with California's Mandatory Fee Arbitration Act ("MFAA") provisions in serving upon Worldex a written notice of its right to arbitrate this dispute.  Dkt. 15-1 at 11.  Second, as the Court noted in footnote 7, above, Worldex advances a 12(b)(6) challenge, nominally under the guise of Article III standing, arguing that Bhs's claims fail because Worldex's action were "consistent with lawful conduct" because *See, supra*, n. 7 (citing Dkt. 15-1 at 12).  At the core of both arguments is the elephant that has been lurking in the room:  Bhs alleges that Worldex was a client of Bhs under the alter ego doctrine.  The Parties dispute how far such allegations extend.  The Court turns to that discussion first, before applying the results to the causes of action.[13]

### a.    The Invocation of the Alter Ego Doctrine is Governed by, *Inter Alia*, Avoidance of Inequitable Results

As the Court explained in Section III.C.3., above, Worldex does not dispute the alter ego allegations made by Bhs.  *Supra*, § III.C.3. (citing Dkt. 28 at 7-8).  Rather, Worldex seeks to extend them farther than Bhs alleges.

Taking Bhs's allegations as true at the pleading stage, the Court assumes that Worldex is an alter ego of WCQ.  But this assumption comes with an important caveat.  Federal courts "apply the law of the forum state in determining whether a corporation is an alter ego" of an individual (or, in this case, of another corporation).[14]  *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), *opinion amended on denial of reh'g*, 335 F.3d 834 (Jul. 7, 2003).  "To establish a party as the alter ego of a corporation, the applicant must show '(1) that there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and

---

[13] Worldex does not divide its arguments by cause of action in its motion, leaving the Court to divine which causes of action are implicated in each argument.  Such an approach to briefing is unhelpful and inefficient.

[14] Although most often phrased as between a corporation and an individual, the doctrine is equally applicable (and the test is the same) as between a parent and its subsidiary.  *See, e.g.*, *Santa Clarita Org. for Plan. & Env't v. Castaic Lake Water Agency*, 1 Cal. App. 5th 1084, 1105 (2016), *as modified on denial of reh'g* (Aug. 16, 2016)

(2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' … Both factors must be found for alter ego liability to be imposed." *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 597 (N.D. Cal. 2012) (quoting *Automotriz del Golfo de California v. Resnick*, 47 Cal.2d 792, 796, 306 P.2d 1 (1957)), *aff'd sub nom. Bank of Montreal v. Salyer*, 599 F. App'x 706 (9th Cir. 2015). The Court takes as a given the first prong based on Bhs's allegations and Worldex's reliance thereon.

Bhs argues, however, that the second prong means that application of the alter-ego doctrine is not a two-way street: in other words, Bhs urges that "[j]ust because Plaintiff invokes the doctrine of alter ego [for its benefit], this does **not** allow W[orldex] to also invoke alter ego doctrine to their advantage – *i.e.*, seeking protection as a client of Plaintiff." Dkt. 21 at 13 (emphasis in original). For the following reasons, the Court agrees with Bhs in part.

The California Supreme Court has sometimes described application of the alter ego doctrine as meaning that "under certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985) (criticizing the decision of a court in this District and explaining: "this is where the court in *Fuls* [*v. Shastina Properties, Inc.*, 448 F. Supp. 983 (N.D. Cal. 1978)] went astray—when a court disregards the corporate entity, it does not dissolve the corporation."). Thus, the Court agrees with Bhs that extension of the alter ego doctrine from one purpose (*e.g.*, to find personal jurisdiction over Worldex for Counts II-IV, as the Court has done above (*see,* supra, § III.C.3)) does not automatically extend it to all other purposes (*e.g.*, to automatically provide Worldex with affirmative defenses to counts II-IV). *See* Dkt. 21 at 13. At the same time, the California Supreme Court emphasized in *Mesler* that "[t]he essence of the alter ego doctrine is that justice be done." Accordingly, if the failure to apply alter-ego piercing means that "an inequitable result will follow," then the Court's alter-ego determination can go both ways – it can support both liability and affirmative defenses. *Cf. Mesler*, 39 Cal. 3d at 301. Thus, the Court agrees with Bhs that "reverse[-]invoking the alter ego doctrine is not **automatic**," (Dkt. 21 at 13 (emphasis changed)); it is, however, permissible.

United States District Court
Northern District of California

Here, the Court has invoked the alter ego doctrine in finding that Worldex is subject to general jurisdiction in California for Counts II-V by way of its subsidiary, WCQ. *See, supra*, § III.C.2. The Court similarly finds that, based upon Bhs's allegations taken as true at this stage, Worldex could be liable for WCQ's alleged breach of contract and unpaid fees under Counts II-V. *See*, FAC, ¶¶ 31-55. Considering the specific attorney-client posture of Counts II-IV, however, it would be inequitable to hold Worldex (on behalf of its subsidiary, WCQ) to all of the obligations of a client in an attorney-client relationship without also affording Worldex the benefit of the most basic of client protections, such as the right to terminate counsel and the right to arbitrate fee disputes. At the same time, Federal Rule of Civil Procedure Rule 8 expressly permits pleading in the alternative, and Bhs is the master of its complaint.

Drawing from these facts, principles and the guidance of the California Supreme Court in *Mesler*, the Court concludes that justice is best served in this case by applying alter-ego veil-piercing both ways (*i.e.*, to prove liability and to prove affirmative defenses), but only on a claim-by-claim basis. For Count I, where Bhs asserts a claim against Worldex for intentional interference with Bhs's contract with WCQ, it would indeed be inequitable to allow Worldex to assert client-based affirmative defenses on the basis of the alter-ego doctrine, because Bhs's own claim does not treat Worldex as the client. Neither alter-ego liability nor defenses will be imposed for Count I. However, for Counts II-V, following from the Court's analysis above, Worldex is deemed to be the alter-ego of WCQ for both purposes, that is for proving liability and for assertion of affirmative defenses.

> **b.    As to Counts II-V, as the Alter Ego of WCQ, Worldex was Entitled to a MFAA Notice**

California Business and Professions Code ("CBPC") Section 6200(a) requires the State Bar to "establish, maintain, and administer a system and procedure for the arbitration … of disputes concerning fees, costs, or both, charged for professional services by licensees of the State Bar or by members of the bar of other jurisdictions." As established in the MFAA and codified in the CBPC, these rules require at a minimum "that an attorney shall forward a written notice to the client prior to or at the time of service of summons or claim in an action against the client … for

recovery of fees, costs, or both." CBPC § 6201(a). "Failure to give this notice shall be a ground for the dismissal of the action or other proceeding." *Id.*

Worldex argues that, because Bhs did not provide it with a written MFAA notice, Counts I-V must be dismissed. Dkt. 15-1 at 11; Dkt. 28 at 6-8. Bhs does not contest that it failed to provide such notice, and the FAC does not allege that such notice was provided. *See, generally*, FAC; Dkt. 21 at 13-15. Rather, Bhs contends that WCQ—not Worldex—was the client.

For the reasons set forth in Section III.C.4.a., above, Bhs's contention is not persuasive as to Counts II-V. Counts II-V allege that, as the alter ego of WCQ, Worldex is liable for attorney's fees under the attorney-client agreement. FAC, ¶¶ 33, 40, 43, 46-50, 52-53 and Prayer for Relief, ¶ 1 (*e.g.*, "WCQ is an alter ego of Worldex. Defendant [*i.e.*, Worldex] requested, by words and conducts, that Plaintiff perform legal services in connection with the Mendoza Action. Plaintiff performed the services as requested. Defendant has not paid for the services." (paragraph numbering omitted)). In other words, having alleged that Worldex is its client (as an alter ego of WCQ) for the purposes of pursuing Counts II-V, Worldex must be entitled to receive an MFAA notice as a client. Accordingly, Counts II-V must be dismissed.

However, there are no such allegations in Count I. Rather, Bhs's theory underpinning Count I assumes that Worldex was *not* its client, because a party cannot tortiously interfere with its own agreement. *E.g.*, *No Cost Conf., Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1304 (S.D. Cal. 2013) ("[A] party to an agreement cannot interfere with its own contract." (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994))). Accordingly, because the Court does not extend alter-ego affirmative defenses to Count I, (*see, supra*, § III.C.4.a.), it does not agree that Worldex is Bhs's client for the purposes of Count I. Indeed, the Federal Rules of Civil Procedure permit the pleading of inconsistent, alternative causes of action. Fed. R. Civ. P. 8(d). Accordingly, Worldex is not entitled to MFAA notice as to Count I.

Thus, the Court **GRANTS IN PART** and **DENIES IN PART** Worldex's Motion on MFAA grounds. Counts II-V are **dismissed without prejudice but subject to the MFAA**. Count I is not dismissed on MFAA grounds.

////

United States District Court
Northern District of California

###### c.    Worldex's Argument as to the Absolute Right of a Client to Terminate Counsel is Moot in Part and Otherwise Unpersuasive

Finally, Worldex argues that a client has the absolute right to discharge its attorney at any time, so Bhs's complaint fails to state a claim for relief.  *See* Dkt. 15-1 at 12.

As to Counts II-V, the Court **DENIES as moot** Worldex's Motion.  *See, supra*, § III.C.4.b.

On the merits, Bhs opposes dismissal arguing that its claims are not based on the termination *per se*, but on the non-payment of fees that resulted.  Dkt. 21 at 15.  Here, the Court agrees.  "Under California law, a client may discharge an attorney at any time for any reason [but] the client [is] obligat[ed] compensate the discharged attorney in quantum meruit for the reasonable value of services rendered."  *Clinton v. Adams*, No. 10-cv-09476-ODW (PLAX), 2014 WL 6896021, at *5 (C.D. Cal. Dec. 5, 2014) (citing *Fracasse v. Brent*, 6 Cal. 3d 784, 790-91 (1972)).  Accordingly, Bhs may state a claim for tortious interference with contract to the extent it alleges that Worldex caused WCQ to terminate it as its client *and thus* fail to pay the already-incurred attorney's fees.  *Cf. id.*  However, as noted in Section III.C.1.b., above, Bhs's FAC as currently pleaded lacks allegations as to this second step.  *See, supra*, § III.C.1.b.  Thus, the Court **GRANTS** Worldex's Motion as to dismissal of Count I **with leave to amend** as indicated in Section III.E., below.

### D.    Mr. Mendoza's Anti-SLAPP Motion to Strike or Dismiss

Mr. Mendoza, the Defendant in this case against whom Bhs asserts Count VI only, seeks to:  (1) strike the claim against him based on California's anti-SLAPP statute and award attorney's fees and costs (to be determined by a separate motion), (2) to dismiss the claim for lack of subject matter jurisdiction for lack of complete diversity, (3) to dismiss the claim for lack of subject matter jurisdiction for lack of standing, (4) to dismiss for failure to state a claim and (5) to dismiss under the *Colorado River* doctrine (*Colorado River Water Conservative District v. United States*, 424 U.S. 800 (1976)).

Again, the Court first considers its subject matter jurisdiction in subsection 1, below, for reasons that become clear in subsection 2.  *See, infra*, § III.D.2.

////

28

United States District Court
Northern District of California

**1.    The Court Lacks Subject Matter Jurisdiction Over the Claim Against Mr. Mendoza as Bhs Lacks Standing to Bring the Claim**

The Court returns to one of the issues deferred above:  Does Bhs have standing to seek to vacate the *Mendoza* State Action judgment?  *See, supra*, § III.C.1.a. (noting that, because Count VI was asserted only against Mr. Mendoza, Worldex could not challenge that cause of action). The Court concludes that it does not.

As previously explained, Article III standing requires claimants satisfy three elements:

> (1) the plaintiff suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  These elements are absent on the face of the complaint.

Bhs's claim against Mendoza is that, based upon numerous instances of fraud perpetrated by Mr. Mendoza and/or his attorneys upon the court in the *Mendoza* State Action, Mr. Mendoza secured an allegedly void, favorable judgment against WCQ.  FAC, ¶¶ 56-60.  "On account of all above, WCQ was deprived of due process and fair trial."  *Id.*, ¶ 61.  But Bhs was not the defendant in the *Mendoza* State Action.  *See, supra*, §§ I.A., C.  Bhs was not liable for money damages, nor for anything else, when it lost the case.  In examining Bhs's FAC, it is clear that the only injury *Bhs* suffered as a result of losing the case was being discharged by WCQ and accordingly losing out on its hourly and contingent fees.  *See, e.g.*, FAC at Prayer for Relief.

As the Court has already explained, it interprets Bhs's complaint as directed to both hourly fees and contingent fees.  *See, supra*, § III.C.1.c.  On the first of these, hourly fees, Bhs lacks standing because it cannot establish causation.  That is, assuming *arguendo* that Bhs was owed certain hourly fees notwithstanding the outcome of the *Mendoza* State Action, Mr. Mendoza's alleged fraud in procuring a victory in that action had no role in depriving Bhs of those fees. Rather, WCQ would have been liable for them regardless of the outcome and thus Mr. Mendoza's actions did not cause their non-payment.

As for the second category, contingent fees, while there may be fair traceability to Mr.

29

1    Mendoza, for the same reasons as explained with regard to Worldex, (*see, supra*, § III.C.1.c.), the

2    Court agrees that whether Bhs would have ultimately successfully defended the action if not for

3    the alleged fraud is too speculative to support standing.

4    　　Accordingly, regardless of whether Bhs's injury is deemed to be its unpaid hourly fees or

5    its contingent fees, Bhs lacks standing to pursue a claim against Mr. Mendoza for such fees.

6    Accordingly, there is no case or controversy before the Court with regard to Count VI, the Court

7    lacks subject matter jurisdiction over this claim, and Mr. Mendoza's Motion is **GRANTED**.

8    　　　　　**2.　　The Court Cannot Turn to the Merits of Count VI and So Must Deny
9    　　　　　　　　Mr. Mendoza's Anti-SLAPP Motion as Briefed**

10    　　Next, the Court must resolve an issue not raised by the Parties: whether it may consider

11    the anti-SLAPP motion in the absence of subject matter jurisdiction. For the following reasons,

12    the Court concludes that it cannot.

13    　　While the Court has not found a Ninth Circuit decision on precisely this question, the

14    Ninth Circuit *sua sponte* considered a similar question in the Section 1983 context in *Branson v.*

15    *Nott*, 62 F.3d 287 (9th Cir. 1995). There, the Ninth Circuit held that where "the district court

16    lacked subject matter jurisdiction over Branson's purported civil rights claim in the first instance,

17    it also lacked the power to award attorney's fees under the civil rights attorney fee statute." *Id.* at

18    292-93. *Branson* is, if not dispositive, a caution against entertaining Mr. Mendoza's anti-SLAPP

19    motion absent subject matter jurisdiction.

20    　　However, the California Supreme Court decided an analogous question as a matter of state

21    law, holding that where a California *state* court lack subject matter jurisdiction, it nonetheless has

22    "has the power to resolve an anti-SLAPP motion on jurisdictional grounds." *Barry v. State Bar of*

23    *California*, 2 Cal. 5th 318, 329 (2017). In so holding, the California Supreme Court noted

24    disagreement by the Seventh and Tenth Circuits with *Branson* and explained that even *Branson*

25    acknowledged "there are some circumstances in which attorney's fees or costs may be imposed []

26    where the court proves to be without subject matter jurisdiction," such as for "payment of just

27    costs" under 28 U.S.C. § 1919 or "attorney's fees and costs for wrongful removal" under 28

28    U.S.C. § 1447(c). *Id.* at 327 (citing, *inter alia*, *Branson*, 62 F.3d 293 n.10). Critical to the

United States District Court
Northern District of California

California Supreme Court's decision was the holding that "while a ruling on an anti-SLAPP motion *may* involve a determination of the merits of the plaintiff's claim, it may in other cases involve a determination that the plaintiff's claim fails for another, nonmerits-based reason, such as lack of subject matter jurisdiction." *Id.* at 325.

In light of the above and the Ninth Circuit's opinion in *Branson*—which is binding on this Court, if not controlling of these particular facts—the Court concludes that it cannot award attorney's fees in this case. While it is possible, as the California Supreme Court noted, to determine an anti-SLAPP motion to strike on non-merits grounds, (*see Barry*, 2 Cal. 5th at 325), Mr. Mendoza's arguments are directed entirely to the merits of Bhs's claims. *See* Dkt. 32 at 16-20. The Court cannot reach the merits of Bhs's claim because it lacks subject matter jurisdiction over it and, accordingly, it declines to undertake a *sua sponte* analysis of whether anti-SLAPP attorney's fees are appropriate under a non-merits theory. *See Branson*, 62 F.3d at 292-93). Accordingly, Mr. Mendoza's Motion is **DENIED** as to anti-SLAPP attorney's fees.

### 3. The Remainder of Mr. Mendoza's Motion is Moot

Finally, having dismissed Count VI because the Court lacks subject matter jurisdiction over the claim, the Court **DENIES as moot** the remainder of Mr. Mendoza's Motion.

### E. Bhs's Motion for Leave to File a Second Amended Complaint is Granted in Part and Denied in Part

Finally, the Court turns to Bhs's Motion for Leave to Amend. Dkt. 50. In its proposed second amended complaint, (*see* Dkt. 51-5), Bhs essentially proposes the following changes:

a. Bhs would add an allegation as to the residency of Mr. Mendoza (Dkt. 51-5 at 2);

b. Bhs would plead details as to its alleged fee arrangement with WCQ (*id.* at 2-5);

c. Bhs would allege it never received Worldex's confidential information (*id.* at 5);

d. Bhs would add allegations that Worldex also tortiously interfered with Bhs's engagements with Eddy Lee and Edward Guardado, the plaintiffs on whose behalf Bhs filed the *Lee* Federal Action and the *Guardado* State Action, (*id.* at 9);

e. Bhs would add various clarifications to O'Hagan regarding the nature of Bhs's allegations and directions to cease making purportedly misleading statements of

United States District Court
Northern District of California

facts and law (*id.* at 8-9);

    f.  Bhs would add an additional ground for its cause of action seeking to vacate the *Mendoza* State Action judgment (*id.* at 14); and

    g.  Bhs would increase its request for damages to $800 million or as proven (*id.* at 15).

At this early stage and following two partially-granted motions to dismiss, the Court will "grant leave to amend … unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, the Court determines prejudice to the defendants is likely minimal and instead focuses its analysis on whether the amendments proposed by Bhs would be futile.

First, the Court finds that any proposed amendments relating to recovery of Bhs's contingent fee would be futile. Such a claim is simply too speculative in nature, because it requires the Court to attempt to guess at what the judgment of an independent decisionmaker (the state trial judge) would have been. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413-14 (2013) ("In the past, we have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment. … We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.") (declining to find standing where, "even if respondents could show that the Government will seek the Foreign Intelligence Surveillance Court's authorization to acquire the[ir foreign contacts'] communications … [they] can only speculate as to whether that court will authorize such surveillance."). Accordingly, Bhs's proffered allegations going to its contingent fee against Worldex, and all of its allegations as to Count VI (*i.e.*, proffered allegations (a) and (f)-(g)), would be futile and further amendment will not be permitted.

Second, the Court has explained that Count I—seeking to recover for alleged tortious interference with third party contracts by Worldex—is potentially viable at the pleading stage. *See, supra*, §§ III.C.1.b, C.4.b.-c. The only issue with this claim, as pleaded, is that Bhs has not pleaded that, in addition to causing WCQ to terminate its relationship with Bhs, Worldex caused the non-payment of fees due under the arrangement. The Court finds, on the facts alleged thus far, that such an amendment would not be futile. Accordingly, the Court will permit leave to amend as

1    to Count I, including with regard to proffered allegations (b)–(d), above.

2         Proffered allegations under category (e) remain.  The Court is not certain of the propriety

3    of such "allegations," although they do serve to clarify Bhs's complaint in some ways.  Because

4    Worldex has not opposed such amendments as "redundant, immaterial, impertinent, or

5    scandalous," (*see* Rule 12(f)), and in light of Rule 15's direction that leave should be "freely

6    given," the Court will permit amendment to add such clarificatory text at this time.

7         In sum, Bhs's Motion for Leave to Amend is **GRANTED IN PART** and **DENIED IN**

8    **PART**.  The Court **DENIES** leave to add allegations that fall under category (a), (f) or (g) above

9    and **GRANTS** leave to add allegations falling under category (b), (c), (d) and (e) to its complaint,

10   as well as any allegations relating to how Worldex caused WCQ's (or, for that matter, Mr. Lee's

11   or Mr. Guardado's) nonpayment of fees.

12   **IV.    THE NATURE OF THE REMAINING CASE; MOTIONS FOR SANCTIONS**

13        Bhs's FAC asked this Court to vacate the *Mendoza* State Action judgment and separately

14   to find breach and/or tortious interference by Worldex with Bhs's representation of WCQ.  Bhs's

15   two motions for "sanctions" were deferred, (*see, supra*, §§ III.A-B), and Worldex has filed a letter

16   indicating its intent to seek sanctions against Bhs, (*see* Dkt. 41).  As discussed both herein and in

17   the Court's Order re Recent Filings, the Parties' briefings and filings have at times served to

18   needlessly complicate the case and obscure determination of the key issues.  The Court has heard

19   counsels' apologies and hopes that all counsel have taken and will continue to take its guidance

20   seriously.  The Court now **LIFTS** its prohibition on new filings, (*see* Dkt. 49 at 4) but issues the

21   following directives to focus the Parties' attention on potentially meritorious issues.

22        First, the Court does not have subject matter jurisdiction over Bhs's claim to vacate the

23   judgment in the *Mendoza* State Action.  *See, supra*, §§ III.C.1.c *and* III.D.1.  The decision herein

24   is based upon Bhs's lack of standing, leaving unaddressed potential concerns under *Colorado*

25   *River*, *Younger*, *Rooker-Feldman*.  Given the dismissal of Count VI, further arguments about these

26   doctrines are thus **moot**.  Moreover, the **only** plausible cause of action remaining here is Bhs's tort

27   claim against Worldex for allegedly tortious interference with its agreement(s) with WCQ (and, if

28

United States District Court
Northern District of California

plausibly alleged, with Mr. Lee and Mr. Guardado).[15] Moving forward, the Parties would be best served to focus their attention on this matter, rather than the *Mendoza* State Action judgment.

Second, the Parties have indicated at one point or another their intention to seek sanctions. The Court provides the following guidance as to the potential sanctions motions, including the issues that were **DEFRRED** above.

### A.    Bhs's Motion for Sanctions as to Capstone

False statements are a serious charge. In line with CRPC Rule 3.3, attorneys must not *knowingly* make *false statements* of fact or law to the Court, nor fail to disclose adverse, *controlling* authority *known to be directly adverse* to the positions asserted. *See* CRPC Rule 3.3(a)-(b) (emphasis by the Court). However, Bhs's motions for sanctions as they currently stand do not meet the high bars of knowledge and falsity.

As to the legal authority cited by Capstone, Bhs has not demonstrated false statements nor failure to disclose adverse authority that was known by Capstone. Merely casting authority in the light most favorable to one side or failing to find an adverse authority is insufficient.

As to the allegations of misstatements of fact, as the Court previously noted, Bhs would have this Court draw inferences from certain facts. However, innocent explanations are also possible, and the Court does not conclude that false statements have been made on the record before it. If Mr. Mendoza remained in the case, the Court might deny the motion without prejudice, as facts could come to light making it proper for Bhs to renew its motion. However, because the only claim against Mr. Mendoza is dismissed, Capstone (as Mr. Mendoza's counsel) will not remain at issue. The Court thus **DENIES** the remainder of Bhs's MTDQ Capstone.

### B.    Bhs's Motion for Sanctions as to O'Hagan

As to its MTDQ O'Hagan, Bhs proffers 17 discreet "facts" regarding O'Hagan's conduct that it argues rise to a violation of CRPC Rule 3.3. Dkt. 45-1 at 12-16. The Court notes that, although the Court initially directed O'Hagan to address "only the disqualification issues raised" in Bhs's MTDQ O'Hagan "and in particular addressing whether Bhs has standing to bring the

---

[15] The Court has diversity jurisdiction over such a claim because Worldex is a South Korean corporation while Bhs is a California law firm, and the amount in controversy exceeds $75,000.

United States District Court
Northern District of California

1   motions," Worldex/O'Hagan nonetheless addressed the substance of Bhs's motion for sanctions as

2   well.[16]  *See* Dkt. 58.

3       First, for the same reasons as explained above in Section IV.A., above, the Court does not

4   find that Bhs has shown knowing misstatements of law or failure to disclose known authority by

5   O'Hagan.  Such portion of Bhs's motion is **DENIED**, covering "facts" 7-9, 11, 14, 16 and 17.

6       Second, as to alleged false statements of fact, the Court again notes that such facts must be

7   demonstrably false or knowingly misleading.  Bhs's complaints as to assertedly frivolous

8   arguments made by O'Hagan are not "facts" that can be false.  *See* Dkt. 45-1, "Facts" 3-4, 6, 12-

9   13 and 15.  Such "facts" are addressed in Section IV.C., below.

10      The only serious issues raised by Bhs are O'Hagan's/Worldex's submissions of the Ko and

11  Bae Declarations, with arguably false statements, and Worldex's "[c]oncealing from the Court the

12  fact that WDX and WCQ share the same key officers and directors, the father-son duo of Johng

13  Sik Bae and Youngsoo Bae," while nonetheless opposing service of process and personal

14  jurisdiction.  *See* Dkt. 45-1 at 12-13.  These are "facts" 1-2 and 5.  *Id.*

15      As to these facts, Worldex contends in its opposition that none of the facts it submitted are

16  false.  It explains that the statements made in Mr. Ko's and Mr. Bae's declarations are "correct"

17  because "BHS conflates Worldex executive positions with WCQ executive positions. The two are

18  not one and the same."  Dkt. 58 at 13.  Worldex contends that, for example, when Mr. Bae

19  declared that "WorldEX does not have employees in the United States," it was a true statement.

20  Similarly, when Mr. Ko declared that declared that he was "not an employee of WorldEX,"

21  Worldex argues that it was a true statement and that his business card merely included "strategic

22  placements" of WCQ affiliates such as Worldex.  Dkt. 58-1, ¶¶ 2-3.

23      The Court is unpersuaded by Worldex's/O'Hagan's verbal gymnastics.  The individual

24  sentences may or may not be technically correct;  the declarations as a whole are misleading.  For

25  example, Mr. Bae submitted a half-page, 5-paragraph declaration including the statement:

26  "Worldex does not have employees, offices or operating facilities in the United States and has not

27  _____

28  [16] This was perhaps because one of Bhs's grounds for disqualification was purportedly false
    submissions by O'Hagan, such that the issues were arguably intertwined.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  in the past." Dkt. 15-3, ¶ 2.  Yet Mr. Bae pointedly omitted that **he himself** simultaneously serves

2  as the CFO and Secretary of WCQ and with his corporate address in Fremont, California.  Dkt.

3  21-4 at 2.[17]  Such a fact is clearly relevant to the Court's determination of whether Worldex might

4  be fairly served process via WCQ as a general manager (as the Court ultimately decides it was),

5  and Worldex would have successfully misled the Court by omitting it if not for Bhs's opposition.

6  The issues with Mr. Ko's declaration are similar.  *See* Dkt. 15-2.  The submission of such bare-

7  bones declarations as Worldex/O'Hagan submitted, omitting known facts relevant to the Court's

8  ultimate decisions, rises to the level of knowingly misleading.

9       In light of this, O'Hagan's submissions harm its credibility in front of this Court, a burden

10  O'Hagan will bear for the remainder of the litigation.  While the Court will not assess monetary

11  sanctions against O'Hagan or Worldex at this time, O'Hagan is **ADMONISHED IN THE**

12  **STRONGEST POSSIBLE TERMS** to heed its duty of candor to the tribunal.  Going forward,

13  the Court will not hesitate to grant sanctions *sua sponte* as warranted.

14       **C.    Frivolous Arguments by the Parties**

15       Third and finally, while a small number of the arguments raised by O'Hagan on behalf of

16  Worldex might be deemed frivolous, (*e.g.*, Worldex's inexplicable attack on a cause of action

17  directed solely to Mr. Mendoza), Bhs has made a similar number of frivolous arguments, (*e.g.*,

18  Bhs's argument that it somehow had standing to disqualify Mr. Mendoza's counsel on the basis of

19  a conflict of interest to which Bhs is wholly ancillary).  Having previously deferred the issue, the

20  Court **DENIES without prejudice** the Bhs's motion for sanctions based on frivolous arguments,

21  because disqualification is not the proper remedy.

22       The Parties are advised that not all losing arguments are frivolous.  The Court does not find

23  the majority of either Party's arguments to have been frivolous and will be hesitant to grant any

24  sanctions.  The Parties should keep in mind the Court's decisions herein, and the extent to which

25  an issue merited discussion, as a guidepost of its strength.  The Parties are further encouraged to

26

27  ---
[17] The Court has some doubts that Mr. Bae never set foot in the United States despite being
28  WCQ's Secretary and CFO and rejects any argument by Worldex that Mr. Bae exists in some
dual-state where he suddenly ceases to be employed by Worldex while in the U.S.

United States District Court
Northern District of California

1    attempt to resolve further sanctions-issues via the meet-and-confer process.

2 **V.**     **CONCLUSION**

3     For the forgoing reasons, the Court **ORDERS** as follows:

4     •   Bhs's motions for disqualification of Capstone and O'Hagan are **DENIED**;

5     •   Bhs's motion for sanctions as to Capstone is **DENIED**;

6     •   Bhs's motion for sanctions as to O'Hagan is **DENIED**, although O'Hagan is

7       **ADMONISHED** that future infractions of the rule of candor may lead to sanctions;

8     •   Bhs's claim against Mr. Mendoza (Count VI) is **DISMISSED with prejudice**;

9     •   Bhs's claims against Worldex as an alter ego of WCQ (Counts II-V) are

10       **DISMISSED without prejudice but subject to the MFAA**;

11     •   Bhs's claim against Worldex as a third-party tort-feasor interfering in its agreement

12       with WCQ (Count I) is **DISMISSED with leave to amend**; and

13     •   Bhs is further **GRANTED leave to amend** as indicated in Section III.E., above.

14     Bhs shall file a revised, second amended complaint **no later than January 20, 2026**.[18]

15 The Court **RESETS** the initial case management conference for **March 10, 2026** at 9:30 a.m.

16

17     **SO ORDERED.**

18 Dated: December 29, 2025

19

20            SUSAN VAN KEULEN
           United States Magistrate Judge

21

22

23

24

25

26

27   [18] Bhs may file an accompanying administrative motion to seal as merited. Bhs's current administrative motion to seal, Dkt. 51, is **TERMINATED AS MOOT** because the Court does not

28 grant Bhs leave to file the amended complaint as attached thereto. The docket entries at Dkts. 51-4 and 51-4 shall be maintained under seal.